**Application of Jesus RODRIGUEZ for Issuance of a Writ of Habeas Corpus.**

**Civ. A. No. 873–63.**

United States District Court
D. New Jersey.

Feb. 28, 1964.

Jesus Rodriguez, pro se.

Joseph H. Tuso, Prosecutor of Cumberland County, N. J., by N. Douglas Russell, Asst. Prosecutor of Cumberland County, N. J., for respondent, State of New Jersey.

MADDEN, Chief Judge.

This application for issuance of a writ of habeas corpus was filed by the petitioner, Jesus Rodriguez, an inmate of the New Jersey State Prison Farm at West Trenton, New Jersey, who is presently serving a sentence of life imprisonment imposed in 1951 by the County Court of Cumberland County, New Jersey, upon his conviction on a plea of non vult to an indictment for murder.

After examining the petitioner's application and accompanying papers, this Court requested and obtained supplemental records from the Supreme Court of New Jersey and the Cumberland County Court and then issued an Order to Show Cause directing the Attorney General of the State of New Jersey and/or the Prosecutor of Cumberland County to appear on the return date and show cause why the writ should not issue. A hearing was held on December 12, 1963, at which time the petitioner was produced and appeared pro se, and N. Douglas Russell, Esquire, Assistant Prosecutor of Cumberland County appeared in behalf of the State of New Jersey. Oral argu-

ments were presented and the matter was taken under advisement by the Court.

In alleging the violation of his constitutional rights under the Due Process Clause of the Fourteenth Amendment, the petitioner raises two main contentions. Briefly, the petitioner contends that his plea of non vult upon which he was convicted and sentenced was not entered voluntarily and with understanding of the nature of the charge and the plea; and, secondly, he asserts that he was not afforded the opportunity to speak in his own behalf at sentencing.

The record discloses the following chronology regarding the petitioner's conviction and sentence. On June 13, 1951, the petitioner killed his "common law wife" by cutting her with a razor. He was arrested and taken into custody. On June 15, 1951, Charles Miller, Esquire and Philip L. Lipman, Esquire were appointed by the Cumberland County Court to represent the petitioner as assigned counsel. Early in August, 1951, the petitioner was indicted by the Cumberland County Grand Jury and charged with murder. On August 14, 1951, he was brought before the Cumberland County Court and entered a plea of not guilty. On September 7, 1951, he retracted his plea of not guilty and thereupon entered in its place a plea of non vult to the indictment. And, finally, on September 14, 1951, he was sentenced by the County Court to a life term of imprisonment.

The first post conviction proceeding wherein the petitioner attacked his conviction and sentence by alleging that his plea of non vult was not entered voluntarily and with understanding of the charge and the plea was in an application to the Superior Court of New Jersey, Law Division, filed on June 5, 1959, and entitled, "Application for Correction of an Illegal Sentence; Via Withdrawal of the Involuntary Plea of Non Vult, and To Stand on Trial." On November 13, 1959, a full and complete hearing thereon was had, and as a result thereof, the Superior Court entered an Order denying the petitioner's application. This Order was affirmed on May 23, 1961, by the Supreme Court of New Jersey in a per curiam opinion (State v. Rodriguez, 35 N.J. 151, p. 152, 171 A.2d 306, p. 307), wherein it was stated:

"Defendant now claims he did not enter the plea voluntarily and with an understanding of the nature of the charge and that the trial court failed to make adequate inquiry into defendant's understanding of the plea. The issue turns upon defendant's present assertion that his knowledge of the English tongue as of 1951 was so meagre that he could not communicate with counsel or understand the questions put to him in open court. The testimony, however, strongly shows that defendant's understanding of the English language was ample, that he fully comprehended what transpired, and entered the plea of *non vult* voluntarily and with an appreciation of its consequences."

The second post conviction proceeding wherein this issue was raised was in an application for a writ of habeas corpus to the Superior Court of New Jersey, Law Division, filed on September 7, 1962. This application was denied without a hearing in an Opinion and Order filed on December 31, 1962, by Judge Arthur L. Joseph on the basis of the petitioner's previous post conviction proceeding wherein the issue was determined adversely to the petitioner on a full hearing and appeal. Thereafter, leave to appeal in forma pauperis was denied by the Supreme Court of New Jersey for want of merit.

A careful examination of these post conviction proceedings in the state courts, especially the transcript of the testimony adduced at the hearing on November 13, 1959, on the petitioner's "Application for Correction of an Illegal Sentence; Via Withdrawal of the Involuntary Plea of Non Vult, and To Stand on Trial," and the transcript of what transpired at the time of entry of the plea and at sentencing on Septem-

ber 7 and September 14, 1951, respectively, convinces this Court of the basic soundness of the determinations made on this issue by the state courts.[1] The record also discloses that fair consideration of this issue was afforded the petitioner on his post conviction proceedings in the state courts wherein he made his allegations and presented evidence in support of his contention and wherein he made his appeal.

In light of the foregoing and as a result of this Court's independent consideration, it is concluded that there is no merit to the petitioner's first contention in this application, and that this Court may rely upon the prior factual determinations made with regard thereto by the state courts with which this Court is in accord. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); United States ex rel. Tillery v. Cavell, 294 F.2d 12 (C.A., 3rd Cir., 1961), cert. den. Tillery v. Maroney, 370 U.S. 945, 82 S.Ct. 1589, 8 L.Ed.2d 811.

As to the petitioner's second contention, namely, that at sentencing he was not afforded an opportunity to speak in his own behalf, this issue was raised for the first time in the petitioner's application for a writ of habeas corpus to the Superior Court of New Jersey, Law Division, on September 7, 1962. However, it would appear that no specific determination of the issue was made therein, nor was it determined on its merits by the Supreme Court of New Jersey in its denial of the petitioner's application for leave to appeal in forma pauperis. With due regard to the guides established by the United States Supreme Court in the recent decisions of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) and Townsend v.

Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963), for proceedings of this nature, this Court granted the petitioner a hearing upon that issue.

At the hearing on December 12, 1963, it was admitted on argument by the respondent that the trial court did not afford the petitioner an opportunity to speak in his own behalf at the time of sentencing although the two court appointed attorneys who represented the petitioner both spoke in his behalf. This is also clear from a reading of the transcript of the proceedings at sentencing. Thus it remains to be determined whether the trial court's failure to afford the petitioner an opportunity to speak in his own behalf constitutes a violation of the petitioner's constitutional rights and grounds for this Court to intervene in proceedings of this nature.

The formality of a sentencing court's inquiry of a defendant convicted of a crime as to whether he has any legal cause to show why judgment should not be pronounced against him is known as "allocutus" or "allocution". In capital cases at common law the sentencing court was required to afford a convicted defendant this right of allocution. Today, a convicted defendant is accorded this right in all criminal cases in the Federal and New Jersey Courts by virtue of the rules of court.[2]

Before the imposition of sentence in the Federal courts the sentencing judge is required under Rule 32(a) to afford the defendant convicted of a crime the opportunity *personally* to speak in his own behalf and to present any information in mitigation of punishment. Green v. United States, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961). Similarly, the sentencing judge in the New Jersey

---

1. See State v. Wall, 36 N.J. 216, 176 A.2d 8 (1961), a case bearing close factual similarity, wherein the same contention as propounded by the petitioner herein was rejected by the New Jersey Supreme Court in a per curiam opinion.

2. Rule 32(a) of the Federal Rules of Criminal Procedure provides in pertinent part, as follows:

"* * * Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment."

A similar provision is to be found in R.R. 3:7–10(d) of the New Jersey Rules of Criminal Practice.

courts is committed to a preservation of the right of allocution under R.R. 3:7–10(d). State v. Harris, 70 N.J.Super. 9, 174 A.2d 645 (A.D., 1961). Unfortunately, however, the mandate of Rule 32(a) and R.R. 3:7–10(d) is not always observed and the failure of the sentencing judge in this regard has been held to constitute "error". Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); and State v. Harris, supra.

Although in the Green case the Supreme Court of the United States did not pass upon the question of whether the failure of the district judge to afford the convicted defendant his right of allocution under Rule 32(a) constitutes an "error" per se rendering the sentence illegal, it left no room for doubt as to what Rule 32(a) commands. In the Hill case, however, the Supreme Court was faced directly with the question and held that the failure to grant a convicted defendant the right of allocution is not an "error" subject to collateral attack, and, hence, cognizable in proceedings brought under 28 U.S.C.A. § 2255 or on an application for a writ of habeas corpus. In holding that collateral relief is not available when all that is shown is a failure of the sentencing judge to comply with the formal requirements of the Rule, the Supreme Court stated:

> "The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands

of fair procedure. It does not present 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.' Bowen v. Johnston, 306 U.S. 19, 27 [59 S.Ct. 442, 83 L.Ed. 455]. See Escoe v. Zerbst, 295 U.S. 490 [55 S.Ct. 818, 79 L.Ed. 1566]; Johnson v. Zerbst, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461]; Walker v. Johnston, 312 U.S. 275 [61 S.Ct. 574, 85 L.Ed. 830]; Waley v. Johnston, 316 U.S. 101 [62 S.Ct. 964, 86 L.Ed. 1302]." Hill v. United States, supra, at p. 428 of 368 U.S., at p. 471 of 82 S.Ct., 7 L.Ed.2d 417.

It should be noted, however, that in the Hill case the Supreme Court did not pass upon the question as to whether collateral relief would be available if a violation of Rule 32(a) occurred in the context of other aggravating circumstances, but an affirmative inference may be reasonably drawn from the language employed.[3] The question might have been directly before the Supreme Court in Andrews v. United States, 373 U.S. 334, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963), and determined with very illuminative results, had the case not been remanded to the District Court by reason of a premature appeal by the government. In the Hill case it was indicated that the mere formal "error" was one properly subject to correction on direct appeal rather than by collateral proceedings or proceedings under Rule 35 of the Federal Rules of Criminal Procedure which authorizes the court to correct an *illegal sentence*.[4] Four Justices of the Supreme Court dissented in the Green, Hill and Machibroda cases, as they were of the opinion that the failure of the trial court to inquire at the time of sentencing whether the convicted defendant personally wished to make a statement in his own behalf was "error" of such a nature as to render the sentence illegal and subject to proceedings for correction thereof under Rule 35. No express declaration was

---

3. Hill v. United States, 368 U.S. 424, at p. 429, 82 S.Ct. 468, at p. 471, 7 L.Ed.2d 417.

4. Ibid. The majority of the Court felt that the "error" was not such as to affect the legality of the sentence.

made in the dissenting opinions with regard to the availability of collateral proceedings for the purpose of rectifying the "error" or declaring the sentence illegal.

■■ In any event, even bearing in mind what was stated in Green v. United States, 313 F.2d 6, 10 (C.A., 1st Cir., 1961), namely, that there may be some doubt as to whether the rule of the Green, Hill and Machibroda cases is still the law because of the recent retirement of two of the majority Justices, this Court concludes that the mere failure of the trial court to comply with the formal requirements of a court rule affording the right of allocution is not, in the absence of aggravating circumstances, an "error" that can be raised by collateral attack in habeas corpus proceedings. Nor is this Court dissuaded from this conclusion in the present instance by reason of the fact that the failure of the trial court was the failure of a *state* trial court and the court rule is a *state* court rule (R.R. 3:7–10(d) of the New Jersey Rules of Criminal Practice). The "error" in the case at bar is not jurisdictional or constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure, and it does not present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent. Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417; State v. Bray, 67 N.J.Super. 340, 170 A.2d 501 (A.D., 1961).[5]

Even if the petitioner had been able to present facts which might be considered aggravating circumstances so as to induce this Court to declare the sentence illegal, it is extremely doubtful that this Court could do anything more than to remand the case for resentencing, and certainly the petitioner would not be entitled to his release.

Therefore, in light of the foregoing, it is hereby determined that the petitioner's application should be dismissed.

Wherefore, it is on this 28th day of February, 1964, ordered that the petitioner's application be and is hereby denied.

5. It should be noted that while the defendant in State v. Harris, supra, obtained a resentencing on the basis of the error, the defendant in State v. Bray, supra, did not. The distinguishing feature of the two cases apparently resides in the fact that in the Bray case the defendant utilized habeas corpus proceedings to contest the "error" rather than a direct appeal as in the Harris case.