85 N.J. Super. 170 (1964)
204 A.2d 220
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DONALD D. LAIRD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 21, 1964.
Decided October 26, 1964.
*172 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. Donald D. Laird, appellant, pro se.
Mr. Stanley E. Rutkowski, Mercer County Prosecutor, attorney for respondent (Mr. J.C. Popkin, Assistant Prosecutor, on the brief).
The opinion of the court was delivered by LEWIS, J.A.D.
This court granted defendant Donald D. Laird leave to appeal in forma pauperis from a denial of a writ of habeas corpus. The defendant, after a plea of guilty, was sentenced on May 12, 1961 on two accusations  one for breaking and entering with intent to steal, and the other for breaking and entering, and larceny. The court imposed a sentence of three to four years as to the former, and two to three years as to the latter (inclusive of both counts), the sentences to run consecutively and to be served at the New Jersey State Prison.
Defendant thereafter filed four successive postconviction applications (including two applications for a writ of habeas corpus) attacking his sentences on various grounds. On two or more such occasions he specifically raised the questions of not having been given an opportunity personally to speak in his own behalf at the time of sentencing and of the inadequacy *173 of the presentence investigation report on the basis of which the sentences were imposed. Defendant was not represented by counsel in any of those proceedings, all of which were decided against him. He seeks review of the last order of denial dated August 28, 1963.
This appeal is prosecuted by the prisoner pro se and, in substance, is predicated upon three alleged errors: (1) defendant was not accorded the right to bail; (2) the presentence report was false and inadequate; and (3) the trial court did not afford him the opportunity to speak in his own behalf before the imposition of sentence. The first two charges warrant summary disposition as they lack meritorious support.

I.
The defendant was properly held without bail by the committing magistrate, and no application for bail was made to the Superior Court or County Court as provided by R.R. 3:9-3.

II.
We called for and have reviewed the presentence record. The actual investigative report in connection with the sentencing in controversy consisted of a three-page report of the "Mercer County Probation Department  Social Investigation," to which were attached statements of defendant and a complaining witness. The total record of the probation department in connection with defendant includes a considerable volume of material accumulated in connection with previous investigations incident to numerous sentences of defendant for previous crimes and offenses occurring over a period of several years. This material contained, among other things, a letter addressed to the Mercer County prosecutor, under date of November 3, 1960, from Drs. J.B. Spradley and Robert S. Garber, who examined the defendant while he was confined in the Mercer County jail. All of the prior investigative reports were made available to the court at the time of the sentencing here involved.
*174 The fact that the probation officer, in conducting his last investigation, "did not go to defendant's home and interview his wife, nor make a general survey of his neighborhood to obtain the attitude of his neighbors toward him," does not in itself impugn the adequacy of the report as rendered. The prisoner's background as revealed by prior investigations was a proper matter for judicial consideration and, to the extent of the information therein contained, justified curtailing the scope of a current investigation which might have been more extensive if defendant had been a first-time offender.
For the most part the allegations of the prisoner leveled at the presentence report are imaginatively false, such as the statement "it appears here that the court sentenced the defendant for drinking and not for the crime charged." The sentences imposed were less than the maximums provided by law; and it seems obvious that the trial judge, in making reference to defendant's liquor and home-life problems, had taken those factors into consideration as possibly justifying an amelioration of punishment. State v. Pohlabel, 61 N.J. Super. 242 (App. Div. 1960), is clearly distinguishable. There, the court was in fact misled by the presentence report, and the circumstances, unlike here, compelled a reversal.

III.
We turn now to the critical aspect of this appeal, the alleged deprivation of defendant's right to make a personal statement at sentencing. Review of this point calls for discerning inspection as to what transpired at the time the prisoner stood before the sentencing court. The facts can be best brought into focus by quoting from the record. After the prosecutor moved for sentence, defendant's counsel made a brief statement on behalf of his client (two paragraphs in print), concluding, "We respectfully ask the court's consideration of Mr. Laird's condition and habit in passing sentence upon him." Previously thereto neither the judge nor defendant said anything. The trial judge then addressed the prisoner for the first time:
*175 "THE COURT: Mr. Laird, how old are you?
THE DEFENDANT: Thirty-five.
THE COURT: You started to get into trouble almost twenty years ago, didn't you?
THE DEFENDANT: Yes, sir.
THE COURT: You've got a record here that runs for a score of types of offenses and over a period of these past twenty years.
Now, what counsel is indicating you ought to have some rehabilitation. Unfortunately under our system of retribution that society wants for the commission of an offense the only kind of rehabilitation that is permitted and allowed is to put you in jail, get you away from liquor and hope that while you are away from liquor long enough you may develop the habit and when you come out you will stay away from it and take care of your family. Of course, I realize you have had some family trouble too but you still have a responsibility to your children who are of tender years to take care of them.
I am going to sentence you on the first charge to not less than three nor more than four years in the State Prison and on the second charge not less than two nor more than three years in the State Prison. These two sentences to run consecutively.
THE DEFENDANT: Your Honor 
THE COURT: I will hear you.
THE DEFENDANT: I would like to know if it's possible I can be remanded to the county jail to prepare an appeal?
THE COURT: You can do that from the State Prison just as well as the county jail.
THE DEFENDANT: I would like to go on record * * *. I would like everyone to note the flag that is displayed here in the court room. * * * It's a 48 star flag and I would like it go on record."
The prosecutor maintains in his brief that there is no irregularity in the foregoing procedure since defendant does not demonstrate that by a personal statement in his own behalf he could have added anything to the information already before the court which would have changed or mitigated the imposed sentences, citing State v. Bray, 67 N.J. Super. 340 (App. Div. 1961). We are then requested to compare State v. Harris, 70 N.J. Super. 9 (App. Div. 1961), where a remand for a resentencing was ordered because "the state admitted error." Thus, argues the prosecutor, the State resists a return of the prisoner for resentencing in the instant matter because no error is here conceded.
At the time defendant was sentenced R.R. 3:7-10(c), in its pertinent part, provided:
*176 "Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment."
The wording of our rule was identical with the language employed in Rule 32(a) of the Federal Rules of Criminal Procedure (18 U.S.C.A., p. 7) which received the interpretive deliberation of the United States Supreme Court in Green v. United States, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961). That case was noted, quoted and followed in Harris, supra, with the comment, "The court rejected the Government's contention that merely affording defendant's counsel the opportunity to speak fulfills the dual role of Federal Criminal Rule 32(a)." 70 N.J. Super., at p. 18. Moreover, this court in State v. James, 84 N.J. Super. 109, 115 (App. Div. 1964), approvingly cited and reaffirmed what we had previously enunciated in Harris, adding the caveat "to the extent that State v. Bray * * * is in conflict therewith [Green], the latter case [Bray] is overruled."
It seems to us appropriate to here re-emphasize the legal significance of the right of allocution as recognized in Green v. United States, supra. There, although no majority opinion prevailed, eight members of the court were in agreement that Federal Rule 32(a), supra, required federal judges before imposing sentence to afford a convicted defendant the opportunity to speak personally for himself, and this notwithstanding the presence of counsel and anything he might say on the prisoner's behalf. Mr. Justice Frankfurter, whose views were shared by Justices Clark, Harlan and Whittaker, explained:
"The design of Rule 32(a) did not begin with its promulgation; its legal provenance was the common-law right of allocution. As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal. See Anonymous, 3 Mod 265, 266, 87 Eng Rep 175 (KB). Taken in the context of its history, there can be little doubt that the drafters of Rule 32(a) intended that the defendant be personally afforded the opportunity to speak before imposition of sentence. * * * The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." 365 U.S., at p. 304, 81 S.Ct., at p. 655. *177 In that opinion the legality of the sentence was upheld because the defendant had failed to meet his burden of showing that he was not accorded the right which Federal Rule 32(a) guarantees. Mr. Justice Stewart joined in affirmance, expressing doubt, however, as to a clear violation of the rule when the defendant has a lawyer at his side who speaks fully on his client's behalf. The Justice said:
"But I do think the better practice in sentencing is to assure the defendant an express opportunity to speak for himself, in addition to anything that his lawyer may have to say." 365 U.S., at p. 306, 81 S.Ct., at p. 656.
In the dissent, written by Mr. Justice Black, concurred in by the Chief Justice and Justices Douglas and Brennan, it was found that the trial court's bare statement  "Do you want to say something?"  was an explicit question addressed to defendant's counsel and not to the defendant himself. The governing legal question, reasoned the writer, is whether the trial judge addressed himself to the defendant personally, since
"* * * it would be wholly artificial to regard this opportunity as having been afforded in the absence of a specific and personal invitation to speak from the trial judge to the defendant." 365 U.S., at p. 307, 81 S.Ct., at p. 656.
In support of a remand for resentencing, the dissenting opinion concluded:
"A rule [32(a)] so highly prized for so sound a reason for so long a time deserves to be rigorously enforced by this Court, not merely praised in resounding glittering generalities calculated to soften the blow of nonenforcement." 365 U.S., at p. 311, 81 S.Ct., at p. 658.
In the same term of court, on direct appeal, in a case where the sentencing judge disregarded the mandate of Federal Rule 32(a), certiorari was granted. By per curiam opinion, on the cited authority of Green which had just been decided, the judgment on review was reversed and the matter remanded for resentencing. Van Hook v. United States, 365 U.S. 609, *178 81 S.Ct. 823, 5 L.Ed.2d 821 (1961). Accord, United States v. Bebik, 302 F.2d 335 (4 Cir. 1962). But see the subsequent five-to-four decision in Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), rehearing denied 369 U.S. 808, 82 S.Ct. 640, 7 L.Ed.2d 556 (1962), where the failure to follow the formal requirements of the rule in question was held not to be an error which in itself could be raised by collateral attack upon the judgment and sentence.
We revert now to the transcript in the instant case from which it appears that Laird, before the court pronounced its sentence, was not invited to speak personally in his own behalf. During the contemporaneous colloquy before the bench, defense counsel spoke briefly. The questions propounded by the judge to defendant before he announced sentence were precise and called for direct and responsive answers; they did not solicit a general statement by defendant in mitigation of punishment. After the court had pronounced its sentence and the prisoner addressed the judge, the latter then said, "I will hear you." At that moment, no doubt, in the mind of the defendant the decision of the court was a fait accompli and he was obsessed with only one thought, as evidenced by his request to be remanded to the county jail, "to prepare an appeal." Compliance with the letter and spirit of our R.R. 3:7-10(c), the counterpart of Federal Rule 32(a), was obviously not observed.
We note that the afore-quoted provision of R.R. 3:7-10(c) was amended December 9, 1963 (effective January 2, 1964) to read:
"Before imposing sentence the court shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment. The defendant may answer personally or by counsel." (Now identified as R.R. 3:7-10(d); emphasis supplied)
Strict adherence to that rule, which is legally essential, can be assured if trial judges unambiguously address themselves to the defendant, leaving "no room for doubt that the defendant *179 has been issued a personal invitation to speak prior to sentencing." Green v. United States, supra, 365 U.S., at p. 305, 81 S.Ct., at p. 655. If only counsel speaks for the prisoner, the record should be unmistakably clear that the defendant had made that choice after being informed by the judge that he had the right to make a personal statement in addition to that of counsel.
It is apparent that Laird was aware of the fact that he was entitled to have his sentence reviewed and, for that purpose and within the time prescribed for appeal, he mistakenly initiated proceedings for a writ of habeas corpus. As this court has said, "a party should not be put out of court if through error he selects the wrong form." Manda v. State, 28 N.J. Super. 259, 264 (App. Div. 1953); Jenkins v. State, 57 N.J. Super. 93, 103 (App. Div. 1959), reversed on other grounds 32 N.J. 109 (1960). Under the extenuating circumstances here presented, we shall treat defendant's petition now before us as the equivalent of a timely appeal from a trial court's refusal to correct a sentence.
We are impelled from our study of the record to conclude that defendant should be resentenced in conformity with R.R. 3:7-10(d). As a remand is necessary, we suggest, in light of defendant's challenges to the presentence reports previously considered by the sentencing judge, and in order to dispel any possible doubt as to the adequacy of the reports, that the trial court obtain before resentencing a current "Presentence Investigation and Report" consistent with the manual on that subject promulgated by the Administrative Office of the Courts in September 1964. Further, counsel should be assigned to represent defendant in connection with the resentencing. See State v. Jenkins, 32 N.J. 109, 112 (1960).
The sentences appealed are vacated, and the matter is remanded for resentencing.